## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

DWAYNE TRAN,
an individual,                                                    Case No.:

       Plaintiff,

v.

NAVY FEDERAL CREDIT UNION,
a national credit union

       Defendant.

_____/

## VERIFIED COMPLAINT

**COMES NOW**, Plaintiff, DWAYNE TRAN (hereinafter, "Plaintiff"), by and through the undersigned counsel, and hereby sues Defendant, NAVY FEDERAL CREDIT UNION (hereinafter, "Defendant"). In support thereof, Plaintiff states:

## INTRODUCTION AND PRELIMINARY STATEMENT

This is an action for damages brought by an individual consumer for Defendant's violations of the Florida Consumer Collection Practices Act, Chapter 559, Florida Statutes (hereinafter, the "FCCPA") and the Telephone Consumer Protection Act, 47 United States Code, Section 227 (hereinafter, the "TCPA").

## JURISDICTION AND VENUE

1.     Jurisdiction of this Court arises under 47 United States Code, Section 227(b)(3), 28 United States Code, Section 1337, and supplemental jurisdiction exists for the FCCPA claims pursuant to 28 United States Code, Section 1367.

2.     Venue in this District is proper because Defendant transacts business in this District, and the conduct complained of occurred in this District.

3.     At all material times herein, the conduct of Defendant, complained of below, occurs

1

in Pinellas County, Florida.

4.      At all material times herein, Plaintiff is an individual residing in Pinellas County, Florida.

5.      At all material times herein, Defendant is a national credit union existing under the laws of the state of Virginia with its principal place of business located at 820 Follin Lane, Vienna, Virginia 22180.

## FDCPA AND FCCPA STATUTORY STRUCTURE

6.      The FCCPA is a state consumer protection statute, modeled after the Fair Debt Collection Practices Act, 15 United States Code, Section 1692 (the "FDCPA") a statute designed to prohibit unfair, deceptive, and abusive practices in the collection of consumer debts as well as to protect against the invasion of individual privacy.  15 U.S.C., §§ 1692(a) and (e); Fla. Stat. §§ 559.55 and 559.77(5).

7.      The FDCPA imposes civil liability on any debt collector—and the FCCPA imposes liability on any creditor/person as well as any debt collector—who "uses any instrumentality of interstate commerce or the mails in any business the principal purposes of which is the collection of any debts," or who "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another" and both statutes prohibit engaging in particular violative conduct in connection with collecting consumer debts.  15 U.S.C. § 1692(a)(6); Fla. Stat. § 559.55(5).

8.      Specifically, the FDCPA and FCCPA prohibit unlawful debt collection "communication" with consumer debtors, which is defined as "the conveying of information regarding a debt *directly or indirectly* to any person *through any medium*."  15 U.S.C. § 1692(a)(2); Fla. Stat. § 559.55(2) (emphasis added).

9.      For example, the FDCPA and FCCPA each prohibit a debt collector from engaging

in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a consumer debt, and prohibits a person from communicating directly with a debtor known to be represented by an attorney in an attempt to collect a consumer debt.  *See* 15 U.S.C. §§ 1692(c)-(d) and Fla. Stat. §§ 559.72(7) and (18).

## TCPA STATUTORY STRUCTURE

10.     Congress enacted the TCPA in an effort to restrict pervasive use of automated or prerecorded telephone calls that invade consumers' personal privacy.  Pub L. 102-243, § 2, Dec. 20, 1991, 105 Sta. 2394 (1), (5), and (10).

11.     Congress intended to prevent automated or pre-recorded telephone calls as "the only effective means of protecting telephone consumers from this nuisance and privacy invasion." *Id*. at §§ (5) and (12).

12.     Under the TCPA, any person who initiates calls to any number assigned to a cellular telephone service using any automated telephone dialing system or artificial or prerecorded voice without the recipient's prior express consent is liable to the recipient for actual monetary loss, or up to $500.00 in damages for each violation of the TCPA, whichever is greater.  47 U.S.C. § 227(b)(3)(B).

13.     Additionally, under the TCPA, the court may increase the damage award up to three (3) times, or up to $1,500.00, for each willful or knowing violation of the TCPA.  *Id* at § 227(b)(3)(C).

## GENERAL ALLEGATIONS

14.     At all material times herein, Defendant is a "creditor" as defined by Florida Statutes, Section 559.55(5).

15.     At all material times herein, Plaintiff is a "debtor" or "consumer" as defined by Florida Statutes, Section 559.55(8).

16.     At all material times herein, Defendant attempts to collect a debt, specifically alleged balances due on loan agreements and credit cards referenced by account numbers ending in -0335 (hereinafter, "Debt -0335"), -6781 (hereinafter, "Debt -6781), -4176 (hereinafter, "Debt -4176), and -3332 (hereinafter, "Debt -3332) (hereinafter collectively, the "Debt").

17.     At all material times herein, the Debt is consumer debt, resulting from a transaction for goods or services and incurred primarily for personal, household, or family use.

18.     At all material times herein, Defendant is a "person" subject to Florida Statutes, Section 559.72.  *See* Fla. Stat. §§ 559.55(5), (7); *Schauer v. General Motors Acceptance Corp.*, 819 So. 2d 809 (Fla. 4th DCA 2002).

19.     At all material times herein, Defendant's conduct, with respect to the Debt complained of below, qualifies as "communication" as defined by Florida Statutes, Section 559.55(2).

20.     At all material times herein, Defendant acted itself or through its agents, employees, officers, members, directors, successors, assigns, principals, trustees, sureties, subrogees, representatives, third-party vendors, and insurers.

21.     All necessary conditions precedent to the filing of this action occurred or Defendant waived or excused the same.

## FACTUAL ALLEGATIONS

22.     Defendant made telephone calls, as more specifically alleged below, to Plaintiff's cellular telephone number 727-XXX-3460 (hereinafter, "Cellular Telephone") using an automatic telephone dialing system (hereinafter, "ATDS"), a predictive telephone dialing system (hereinafter, "PTDS"), or an artificial or pre-recorded voice (hereinafter, "APV").

23.     Plaintiff is the possessor, controller, and regular user of a Cellular Telephone with assigned telephone number 727-XXX-3460.

4

24.    At no time herein did Defendant possess Plaintiff's prior express consent to call Plaintiff's Cellular Telephone using an ATDS, a PTDS, or an APV.

25.    Further, if Defendant contends it did possess such consent at one point in time, Plaintiff nonetheless repeatedly revoked any alleged prior existing consent the moment Plaintiff demanded that Defendant cease calling Plaintiff's Cellular Telephone and again revoked any alleged prior express consent for Defendant to make automated Debt collection calls to Plaintiff's Cellular Telephone the moment Plaintiff advised Defendant that he was represented by an attorney with respect to the Debt and provided Defendant with said attorney's contact information.

26.    Additionally, if Defendant contends the below-referenced phone calls were made for "informational purposes only," Defendant nevertheless lacked the required prior express written consent necessary to place such informational calls to Plaintiff's Cellular Telephone using an ATDS, a PTDS, or an APV.

27.    On or about January 17, 2019, Plaintiff retained Leavengood, Dauval & Boyle, P.A., d/b/a LeavenLaw (hereinafter, "Undersigned Counsel") with respect to the Debt.

28.    On or about January 17, 2019, Undersigned Counsel sent four (4) separate facsimile transmissions to Defendant (hereinafter collectively, the "Faxes of Representation").  Please see attached true and correct copies of said Faxes of Representation and corresponding fax delivery confirmation sheets labeled as Composite Exhibit "A."

29.    Defendant received the Faxes of Representation

30.    The Faxes of Representation provided Defendant with notice and knowledge of Undersigned Counsel's legal representation of Plaintiff with respect to the Debt, provided Defendant with Undersigned Counsel's contact information, requested that Defendant cease communicating with Plaintiff in an attempt to collect the Debt, and requested that Defendant instead direct such communications to Undersigned Counsel's office.

31.     Moreover, the Faxes of Representation explicitly revoked any purported prior existing consent Defendant possessed authorizing Defendant to contact Plaintiff on his Cellular Telephone using an ATDS, PTDS, or APV via phone calls or text messages.  *See* Composite Exhibit "A."

32.     Despite Defendant receiving the Faxes of Representation, possessing actual knowledge of Undersigned Counsel's legal representation of Plaintiff and Undersigned Counsel's contact information, Defendant subsequently continued to attempt to collect the Debt directly from Plaintiff by sending collection letters, sending e-mails requesting payment on the Debt, and by making phone calls to Plaintiff's Cellular Telephone using an ATDS, PTDS, or APV, as further detailed below.

33.     Additionally, each of the below-referenced communications directed to Plaintiff were either initiated by Defendant or were made on Defendant's behalf.

34.     On or about January 25, 2019, despite Defendant possessing actual knowledge of Undersigned Counsel's legal representation of Plaintiff with respect to the Debt and Undersigned Counsel's contact information, Defendant sent a collection letter directly to Plaintiff in an attempt to collect Debt -3332.  Please see attached a true and correct copy of said collection letter labeled as Exhibit "B."

35.     On or about January 28, 2019, despite Defendant possessing actual knowledge of Undersigned Counsel's legal representation of Plaintiff with respect to the Debt and possessing Undersigned Counsel's contact information, Defendant sent a billing statement directly to Plaintiff in an attempt to collect Debt -6781.  Please see attached a true and correct copy of said billing statement labeled as Exhibit "C."

36.     On or about January 29, 2019, despite Defendant possessing actual knowledge of Undersigned Counsel's legal representation of Plaintiff with respect to the Debt and possessing

Undersigned Counsel's contact information, Defendant sent an e-mail directly to Plaintiff in an attempt to collect the Debt.  Please see attached a true and correct copy of said e-mail labeled as Exhibit "D."

37.    On or about January 30, 2019, at approximately 8:32 a.m., despite Defendant possessing actual knowledge of Undersigned Counsel's legal representation of Plaintiff with respect to the Debt and possessing Undersigned Counsel's contact information, and despite Plaintiff revoking any purported prior express consent authorizing Defendant to make calls to Plaintiff's Cellular Telephone, Defendant called Plaintiff's Cellular Telephone using an ATDS, PTDS, or APV.

38.    Defendant made the immediately aforementioned call from telephone number 703-255-0862 in an attempt to collect the Debt directly from Plaintiff.

39.    On or about January 30, 2019, at approximately 2:01 p.m., despite Defendant possessing actual knowledge of Undersigned Counsel's legal representation of Plaintiff with respect to the Debt and possessing Undersigned Counsel's contact information, and despite Plaintiff revoking any purported prior express consent authorizing Defendant to make calls to Plaintiff's Cellular Telephone, Defendant called Plaintiff's Cellular Telephone using an ATDS, PTDS, or APV

40.    Defendant made the immediately aforementioned call from telephone number 866-226-1038 in an attempt to collect the Debt directly from Plaintiff.

41.    On or about January 31, 2019, at approximately 12:05 p.m., despite Defendant possessing actual knowledge of Undersigned Counsel's legal representation of Plaintiff with respect to the Debt and possessing Undersigned Counsel's contact information, and despite Plaintiff revoking any purported prior express consent authorizing Defendant to make calls to Plaintiff's Cellular Telephone, Defendant called Plaintiff's Cellular Telephone using an ATDS,

PTDS, or APV.

42.     Defendant made the immediately aforementioned call from telephone number 703-255-0862 in an attempt to collect the Debt directly from Plaintiff.

43.     During the call referenced in paragraph forty-one (41) above, Plaintiff answered Defendant's call, and after waiting for a live agent to come on the line, Plaintiff spoke with Defendant's employee or representative "Ashley" and advised that Plaintiff retained Undersigned Counsel with respect to the Debt, requested that Defendant contact Undersigned Counsel regarding the Debt, and demanded that Defendant to cease calling Plaintiff's Cellular Telephone.

44.     On or about January 31, 2019, at approximately 2:41 p.m., despite Defendant possessing actual knowledge of Undersigned Counsel's legal representation of Plaintiff with respect to the Debt and possessing Undersigned Counsel's contact information, and despite Plaintiff revoking any purported prior express consent authorizing Defendant to make calls to Plaintiff's Cellular Telephone, Defendant called Plaintiff's Cellular Telephone using an ATDS, PTDS, or APV.

45.     Defendant made the immediately aforementioned call from telephone number 866-226-1038 in an attempt to collect the Debt directly from Plaintiff.

46.     On or about February 6, 2019, at approximately 8:48 a.m. despite Defendant possessing actual knowledge of Undersigned Counsel's legal representation of Plaintiff with respect to the Debt, and possessing Undersigned Counsel's contact information, Defendant called Plaintiff's Cellular Telephone using an ATDS, PTDS, or APV.

47.     Defendant made the immediately aforementioned call from telephone number 703-255-0862 in an attempt to collect the Debt directly from Plaintiff.

48.     On or about February 7, 2019, at approximately 9:54 a.m., despite Defendant possessing actual knowledge of Undersigned Counsel's legal representation of Plaintiff with

respect to the Debt and possessing Undersigned Counsel's contact information, and despite Plaintiff revoking any purported prior express consent authorizing Defendant to make calls to Plaintiff's Cellular Telephone, Defendant called Plaintiff's Cellular Telephone using an ATDS, PTDS, or APV.

49.   Defendant made the immediately aforementioned call from telephone number 703-255-0862 in an attempt to collect the Debt directly from Plaintiff.

50.   During the call referenced in paragraph forty-eight (48) above, Plaintiff answered Defendant's call, and after waiting for a live agent to come on the line, Plaintiff spoke with Defendant's employee or representative "Luke" and *again* advised that Plaintiff retained Undersigned Counsel with respect to the Debt, requested that Defendant contact Undersigned Counsel regarding the Debt, and demanded that Defendant to cease calling Plaintiff's Cellular Telephone.

51.   On or about February 7, 2019, despite Defendant possessing actual knowledge of Undersigned Counsel's legal representation of Plaintiff with respect to the Debt and Undersigned Counsel's contact information, Defendant sent a collection letter directly to Plaintiff in an attempt to collect Debt -6781.  Please see attached a true and correct copy of said collection letter labeled as Exhibit "E."

52.   On or about February 9, 2019, at approximately 9:25 a.m., despite Defendant possessing actual knowledge of Undersigned Counsel's legal representation of Plaintiff with respect to the Debt and possessing Undersigned Counsel's contact information, and despite Plaintiff revoking any purported prior express consent authorizing Defendant to make calls to Plaintiff's Cellular Telephone, Defendant called Plaintiff's Cellular Telephone using an ATDS, PTDS, or APV.

53.   Defendant made the immediately aforementioned call from telephone number 703-

255-8062 in an attempt to collect the Debt directly from Plaintiff

54.     During the call referenced in paragraph fifty-two (52) above, Plaintiff answered Defendant's call, and after waiting for a live agent to come on the line, Plaintiff spoke with Defendant's employee or representative "Bear" and *again* advised that Plaintiff retained Undersigned Counsel with respect to the Debt, requested that Defendant contact Undersigned Counsel regarding the Debt, and demanded that Defendant to cease calling Plaintiff's Cellular Telephone.

55.     On or about February 9, 2019, at approximately 3:00 p.m., despite Defendant possessing actual knowledge of Undersigned Counsel's legal representation of Plaintiff with respect to the Debt, and possessing Undersigned Counsel's contact information, and despite Plaintiff revoking any purported prior express consent authorizing Defendant to make calls to Plaintiff's Cellular Telephone using an ATDS, PTDS, or APV.

56.     Defendant made the immediately aforementioned call from telephone number 703-255-8062 in an attempt to collect the Debt directly from Plaintiff.

57.     During the call referenced in paragraph fifty-five (55) above, Plaintiff answered Defendant's call, and after waiting for a live agent to come on the line, Plaintiff spoke with Defendant's employee or representative "Andre" and *again* advised that Plaintiff retained Undersigned Counsel with respect to the Debt, requested that Defendant contact Undersigned Counsel regarding the Debt, and demanded that Defendant to cease calling Plaintiff's Cellular Telephone.

58.     In response, Defendant *finally* agreed to place Plaintiff on a "do not call" list and take his number out of Defendant's system, so that Defendants calls would cease.

59.     On or about February 22, 2019, despite Defendant possessing actual knowledge of Undersigned Counsel's legal representation of Plaintiff with respect to the Debt and Undersigned

Counsel's contact information, Defendant sent a collection letter directly to Plaintiff in an attempt to collect Debt -3332.  Please see attached a true and correct copy of said collection letter labeled as Exhibit "F."

60.     On or about February 25, 2019, despite Defendant possessing actual knowledge of Undersigned Counsel's legal representation of Plaintiff with respect to the Debt and Undersigned Counsel's contact information, Defendant sent a collection letter directly to Plaintiff in an attempt to collect Debt -0335.  Please see attached a true and correct copy of said collection letter labeled as Exhibit "G."

61.     On or about March 5, 2019, despite Defendant possessing actual knowledge of Undersigned Counsel's legal representation of Plaintiff with respect to the Debt and possessing Undersigned Counsel's contact information, Defendant sent an email directly to Plaintiff in an attempt to collect the Debt.  Please see attached a true and correct copy of said billing statement labeled as Exhibit "H."

62.     On or about April 1, 2019, despite Defendant possessing actual knowledge of Undersigned Counsel's legal representation of Plaintiff with respect to the Debt and possessing Undersigned Counsel's contact information, Defendant sent an email directly to Plaintiff in an attempt to collect the Debt.  Please see attached a true and correct copy of said billing statement labeled as Exhibit "I."

63.     As a direct result of Defendant's actions, Plaintiff suffered frustration, confusion, stress, and annoyance, believing that repeatedly requesting that Defendant cease calling Plaintiff regarding the Debt was wholly ineffective, that retaining Undersigned Counsel with respect to the Debt and advising Defendant of the same was wholly ineffective, and that the frequent, repeated debt collection attempts regarding would simply have to be endured unless and until Plaintiff made payment on the Debt to Defendant.

64.    It is Defendant's corporate policy to use an ATDS, a PTDS, or an APV when attempting to collect consumer debts, including the Debt (hereinafter, "Corporate Policy").

65.    Defendant employed its Corporate Policy of using an ATDS, a PTDS, or an APV when Defendant made the calls to Plaintiff's Cellular Telephone in this case.

66.    Defendant made the calls, or caused the calls to be made, to Plaintiff's Cellular Telephone with no effective way for Plaintiff to remove his Cellular Telephone number from Defendant's telephone dialing system.

67.    Defendant's Corporate Policy provides no effective way for a consumer like Plaintiff to effectively revoke any prior existing consent to be called by an ATDS, PTDS, or APV to make Defendant cease calling Cellular Telephone.

68.    Defendant's Corporate Policy and procedures are structured as to continue to call individuals, like Plaintiff, using an ATDS, a PTDS, or an APV, regardless of how many times said individuals and request cease calling a cellular telephone regarding a debt owed to Defendant.

69.    Upon information and belief, Defendant engaged in a pattern and practice of unlawful debt collection and invasion of privacy, repeatedly and willfully calling consumers' cellular telephones in an attempt to collect debts, using an ATDS, a PTDS, or an APV despite lacking consumers' prior express consent to do so.

70.    Defendant willfully, knowingly and repeatedly undertakes these practices to increase its revenue and profitability at the direct expense of consumers' livelihoods and privacy.

71.    Plaintiff has not been able, due to both professional and personal commitments, as well as the continued and increasing stress associated with the continued Debt collection communications, to record the specifics of each and every communication made to Plaintiff. Plaintiff asserts, however, that the above-referenced communications are but a sub-set of the communications made in violation of the FCCPA and TCPA.  Further, Defendant is in the best

position to determine and ascertain the number and methodology of communications made to Plaintiff.

72.     Despite having repeatedly advised Defendant of Undersigned Counsel's representation of Plaintiff with regard to the Debt, Defendant continues to attempt to collect the Debt directly from Plaintiff in violation of the FCCPA.

73.     Defendant's conduct, as described above, is a knowing, willful, and continuing violation of Plaintiff's rights, as enumerated under Florida state law.

74.     Given Defendant's conduct and its apparent intention and ability to continue to collect the Debt directly from Plaintiff in violation of said debt collection laws, Plaintiff has no adequate remedy at law.

75.     Plaintiff retained Undersigned Counsel for the purpose of pursuing this matter against Defendant, and Plaintiff is obligated to pay his attorneys a reasonable fee for their services.

76.     Florida Statutes, Section 559.77 provides for the award of $1,000.00 statutory damages, actual damages, declaratory and injunctive relief, and an award of attorneys' fees and costs to Plaintiff, should Plaintiff prevail in this matter against Defendant.

77.     United States Code, Title 47, Section 227(b)(3) provides for the award of $500.00 or actual damages, whichever is greater, for each telephone call made, directly or indirectly, using any automatic telephone dialing system or an artificial or pre-recorded voice to Plaintiff's Cellular Telephone in violation of the TCPA or the regulations proscribed thereunder.

78.     Additionally, the TCPA, Section 227(b)(3) allows the trial court to increase the damages up to three times, or $1,500.00, for each telephone call made, directly or indirectly, using any automatic telephone dialing system or an artificial or prerecorded voice to Plaintiff's Cellular Telephone in willful or knowing violation of the TCPA or the regulations proscribed thereunder.

79.     As of the date of this complaint, Defendant did not initiate a law suit in an effort to

13

collect the Debt.  Likewise, no final judgment with respect to the Debt has been obtained by, or transferred to, Defendant.

**COUNT ONE:**
**UNLAWFUL DEBT COLLECTION PRACTICE –**
**VIOLATION OF FLORDA STATUTES, SECTION 559.72(7)**

Plaintiff re-alleges paragraphs one (1) through seventy-nine (79) as if fully restated herein and further states as follows:

80.     Defendant is subject to, and violated the provisions of, Florida Statutes, Section 559.72(7) by collecting consumer Debt from Plaintiff through means which can reasonably be expected to abuse or harass Plaintiff.

81.     Specifically, despite Plaintiff's numerous requests that Defendant cease calling him regarding the Debt, Defendant repeatedly made calls to Plaintiff's Cellular Telephone using an ATDS, PTDS, or APV between January 2019 and February 2019, calling Plaintiff *at least* eight (8) times in its attempts to collect the Debt.

82.     Further, despite Plaintiff advising Defendant that he retained Undersigned Counsel with respect to the Debt and providing Defendant with Undersigned Counsel's contact information via the "Faxes of Representation", Defendant continued to communicate directly with Plaintiff in an attempt to collect the Debt by sending *at least* five (5) collection letters and three (3) e-mails directly to Plaintiff, and also by making *at least* eight (8) calls directly to Plaintiff's Cellular Telephone using mindless technology Plaintiff could not avoid.

83.     Defendant's conduct served no purpose other than to annoy and harass Plaintiff into paying the Debt by continuing to impermissibly and unlawfully call Plaintiff's Cellular Telephone and repeatedly communicating directly with Plaintiff in writing in an attempt to collect the Debt, despite Defendant possessing actual knowledge of Undersigned Counsel's legal representation of Plaintiff and Undersigned Counsel's contact information—circumventing Undersigned Counsel's

14

legal representation of Plaintiff—leading Plaintiff to believe he had no other options than to pay the Debt or endure Defendant's repeated Debt collection attempts.

84.     Defendant's willful, flagrant and vulgar violation of, *inter alia*, the Florida Consumer Collections Practices Act as a means to collect a Debt, constitutes unlawful conduct and harassment as is contemplated under Florida Statutes, Section 559.72(7).

85.     As a direct and proximate result of Defendant's actions, Plaintiff sustained damages as defined by Florida Statutes, Section 559.77.

**COUNT TWO:**
**UNLAWFUL DEBT COLLECTION PRACTICE –**
**<u>VIOLATION OF FLORIDA STATUTES, SECTION 559.72(18)</u>**

Plaintiff re-alleges paragraphs one (1) through seventy-nine (79) as if fully restated herein and further states as follows:

86.     Defendant is subject to, and violated the provisions of, Florida Statutes, Section 559.72(18) by intentionally and repeatedly communicating directly with Plaintiff after receiving notice and possessing actual knowledge that Plaintiff retained Undersigned Counsel with respect to the Debt and after possessing Undersigned Counsel's contact information.

87.     Specifically, Defendant possessed actual knowledge that Plaintiff retained Undersigned Counsel with respect to the Debt and possessed Undersigned Counsel's contact information via the Faxes of Representation and Plaintiff directly advising Defendant of the same.

88.     Despite possessing actual knowledge of Undersigned Counsel's representation of Plaintiff with respect to the Debt and Undersigned Counsel's contact information, Defendant subsequently made *at least* eight (8) calls directly to Plaintiff's Cellular Telephone, sent *at least* five (5) collection letters directly to Plaintiff, and sent *at least* three (3) emails directly to Plaintiff in its attempt to collect the Debt.

89.     As such, Defendant attempted to collect the Debt directly from Plaintiff, a known

represented party in violation of Florida Statutes, Section 559.72(18).

90.     As a direct and proximate result of Defendant's actions, Plaintiff sustained damages as defined by Florida Statutes, Section 559.77.

**COUNT THREE:**
**TELEPHONE CONSUMER PROTECTION ACT-**
**VIOLATION OF 47 UNITED STATES CODE, SECTION 227(b)(1)(A)**

Plaintiff re-alleges paragraphs one (1) through seventy-nine (79) as if fully restated herein and further states as follows:

91.     Defendant is subject to, and violated the provisions of, 47 United States Code, Section 227 (b)(1)(A) by using an ATDS, PTDS, or APV to make a call a telephone number assigned to a cellular telephone service without Plaintiff's prior express consent.

92.     At no time herein did Defendant possess Plaintiff's prior express consent to call Plaintiff's Cellular Telephone using an ATDS, a PTDS, and/or an APV.

93.     If Defendant contends it possessed such consent, Plaintiff revoked any such purported consent via the Faxes of Representation, wherein Plaintiff requested that Defendant cease communicating with Plaintiff regarding the Debt, provided notice of Undersigned Counsel's legal representation of Plaintiff with respect to the Debt, and explicitly revoked any prior existing consent previously permitting Defendant to lawfully make calls to Plaintiff's Cellular Telephone regarding the Debt.

94.     Additionally, if Defendant contends the referenced phone calls were made for "informational purposes only," it nevertheless lacked the required prior express consent necessary to place such informational calls to Plaintiff's Cellular Telephone using an ATDS, PTDS, or APV.

95.     Between January 2019 and February 2019, despite lacking Plaintiff's prior express consent and after Plaintiff requested that Defendant cease contacting him directly regarding the Debt via the Faxes of Representation, Defendant made *at least* eight (8) calls to Plaintiff's Cellular

Telephone using an ATDS, PTDS, or APV.

96.     The phone calls made by Defendant complained of herein are the result of a repeated willful and knowing violation of the TCPA.

97.     As a direct and proximate result of Defendant's conduct, Plaintiff suffered:

a.     The periodic loss of his Cellular Telephone service and the cost associated therewith;

b.     Lost material costs associated with the use of peak time minutes allotted under his Cellular Telephone service contract; and

c.     Stress, anxiety, loss of sleep, invasion of privacy, and deterioration of relationships, both personal and professional, as a result of the repeated willful and knowing calls placed in violation of the TCPA.

## PRAYER FOR RELIEF

**WHEREFORE**, as a direct and proximate result of Defendant's conduct, Plaintiff respectfully requests an entry of:

a.     Judgment against Defendant declaring that Defendant violated the FCCPA;

b.     Judgment against Defendant for maximum statutory damages for violations of the FCCPA;

c.     Judgment providing injunctive relief, prohibiting Defendants from further engaging in conduct that violates the FCCPA and the TCPA;

d.     Judgment against Defendant for statutory damages in the amount of $500.00 for each of Defendant's telephone calls that violated the TCPA;

e.     Judgment against Defendant for treble damages in the amount of an additional $1,000.00 for each telephone call that violated the TCPA for which Defendant acted knowingly and/or willfully;

f.      Actual damages in an amount to be determined at trial;

g.      An award of attorneys' fees and costs; and

h.      Any other such relief the Court may deem proper.

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues triable by right.

### SPOLIATION NOTICE AND DEMAND TO RETAIN EVIDENCE

Plaintiff hereby gives notice to Defendant and demands that Defendant and its affiliates safeguard all relevant evidence—paper, electronic documents, or data—pertaining to this litigation as required by law.

Respectfully submitted,

LEAVENLAW

/s/ *Sean E. McEleney*
☐ **Ian R. Leavengood, Esq., FBN 0010167**
**[X] Sean E. McEleney, Esq., FBN 0125561**
Northeast Professional Center
3900 First Street North, Suite 100
St. Petersburg, FL 33703
Phone: (727) 327-3328
Fax: (727) 327-3305
consumerservice@leavenlaw.com
smceleney@leavenlaw.com
*Attorneys for Plaintiff*

18

# VERIFICATION OF COMPLAINT AND CERTIFICATION

STATE OF FLORIDA )
                                              )
COUNTY OF Pinellas )

Plaintiff DWAYNE TRAN, having first been duly sworn and upon oath, deposes and says as follows:

1. I am a Plaintiff in this civil proceeding.

2. I have read the above-entitled civil Complaint prepared by my attorneys and I believe that all of the facts contained in it are true, to the best of my knowledge, information and belief formed after reasonable inquiry.

3. I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.

4. I believe that this civil Complaint is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s), named in the Complaint.

5. I have filed this civil Complaint in good faith and solely for the purposes set forth in it.

6. Each and every exhibit which has been attached to this Complaint, if any, is a true and correct copy of the original.

7. Except for clearly indicated redactions made by my attorneys where appropriate, I have not altered, changed, modified, or fabricated any exhibits, except that some of the attached exhibits, if any, may contain some of my own handwritten notations.

Dwayne Tran

Subscribed and sworn to before me
this 1st day of April , 2019.

Notary Public

My Commission Expires: 07|13|202|    Proof of I.D.: FL DL